IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00299-MSK-PAC

JOHN MEDINA,

      Plaintiff,

v.

DENVER PUBLIC SCHOOLS, a Colorado School District,
DAN NERIM, and
ANDREW PEREZ,

      Defendants.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART

---

THIS MATTER comes before the Court on the Defendants' Motion for Summary Judgment (**#40**). Having considered the motion, the response (**#44**), the reply (**#46**) and the documentary evidence submitted therewith, the Court finds and concludes as follows.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Issue Presented

The Plaintiff, John Medina, asserts three claims for relief against the Denver Public Schools ("DPS"), Dan Nerim, and Andrew Perez.[1] In Claim 1, he alleges that Mr. Nerim and Mr. Perez conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985, because his ethnic background is, in part, Navajo. In Claim 2, he alleges that all Defendants deprived him of a

---

[1] To the extent practicable, the Court refers to each Defendant by name. Otherwise, the Court refers to them, collectively, as "the Defendants."

property interest in his employment without adequate process in violation of 42 U.S.C. § 1983.

In Claim 3, he alleges that DPS and Mr. Nerim violated his right to equal protection in violation

of 42 U.S.C. § 1983.  The issue presented is whether a trial is required on any of these claims.

### III.  Material Facts

Based upon the evidence submitted, which the Court construes most favorably to Mr.

Medina, the Court finds for purposes of this motion that:

1.      Mr. Medina was employed by DPS for more than 25 years.  For part of that time,

he was employed as a Custodian Helper at Sabin Elementary School until July 18, 2003.

2.      Dan Nerim was the Facilities Manager at Sabin Elementary School from August

1992 until August 2003.  He was Mr. Medina's supervisor.  He also supervised Mr. Perez, who

worked as Assistant Custodian from September 2002 to August 2004.  Mr. Perez also supervised

Mr. Medina.

3.      Mr. Medina's ethnic backgound is part Navajo, part Apache, and part Hispanic.

He shared this fact with Mr. Nerim several times.  Mr. Nerim responded: "Well, you can't be

Indian because Indians don't grow whiskers or beards or moustaches."

4.      Mr. Medina also told Mr. Perez that he is Indian.  Mr. Perez responded that

"you're no more Indian than my ass is."

5.      Mr. Medina is illiterate.

6.      On unspecified occasions, Mr. Medina overheard Mr. Nerim and Mr. Perez say

that "the only good Indian is a dead one."  He also overheard a conversation in which either Mr.

Nerim or Mr. Perez said: "you should just get him out of here and get someone else . . . because

[Mr. Medina is] a stupid Indian."  On another occasion, Mr. Medina overheard Mr. Nerim and

Mr. Perez talking about him "being stupid and not being able to read and write and Indians don't know how to do it anyway."

7.      On one occasion, Mr. Nerim and Mr. Perez gave Mr. Medina conflicting instructions as to when he should show up for work.  Mr. Nerim told him to be there at 6:00 a.m. whenever there was snow to be shoveled; Mr. Perez told him to be there at 8:00 a.m.  Mr. Medina showed up for work at 8:00 a.m. and was chastised by Mr. Nerim.

8.      Mr. Nerim suggested to Mr. Medina that he should retire because Mr. Medina could make more money if he received his retirement pension and worked a separate job.  Mr. Nerim offered to hire Mr. Medina on a part-time basis if he retired; Mr. Medina did not believe the offer was genuine.  Mr. Nerim told Mr. Medina that he was "stupid" because he did not retire and take a job someplace else.

9.      On unspecified occasions, Mr. Nerim stated that Mr. Medina was "pussy-whipped."

10.     Mr. Medina suffered from various health ailments, including hemorrhoids.  Mr. Nerim believed that Mr. Medina faked his medical symptoms and was a malingerer.  On an unspecified occasion, Mr. Medina told Mr. Nerim, "you don't really understand and realize how sick I really am."  Mr. Nerim responded, "if you're that God damn fucking sick, get a doctor's excuse and get the hell out of here because you're too fucking old to be here and you ain't worth shit anyway."

11.     Throughout his employment, Mr. Nerim and Mr. Perez repeatedly threatened Mr. Medina that if he did not perform the tasks he was assigned, his employment and benefits could be terminated.

3

12.     While at work in September 2002, Mr. Medina was injured when he slipped and fell in the school cafeteria after a student deliberately threw a piece of meat on the floor to see "what would happen."  Mr. Perez did not allow him to leave the school to seek medical attention.

13.     In October 2002, Mr. Nerim did not allow Mr. Medina to take time off in order to bring his wife to a doctor's appointment.

14.     While at work in January 2003, Mr. Medina suffered an anxiety attack and was transported by ambulance to the hospital.

15.     While at work in February 2003, Mr. Medina experienced rectal bleeding.  At approximately 4:20 p.m., he told Mr. Perez about the bleeding, who required Mr. Medina to continue working.  Shortly thereafter, Mr. Medina saw the school nurse, who told him to go home.  Afterwards, Mr. Nerim did not let him go home and instead required him to continue working.

16.     After work, Mr. Medina went to the hospital.  He was admitted for internal bleeding, and doctors performed a colonoscopy.

17.     Mr. Medina had polyps.  He testifies in his deposition that doctors told him that the polyps and his earlier anxiety attack were caused by stress.

18.     Mr. Medina did not return to work from February 26, 2003 until June 15, 2003.

19.     In either May or June of 2003, Mr. Perez told Mr. Medina that a number of teachers wanted to "get [Mr. Medina] out of here" and did not like Mr. Medina.  Mr. Perez also told Mr. Medina that he was too old to be working and should retire.

20.     In July 2003, Mr. Medina believes that Mr. Perez intentionally mixed a cleaning solution using two soap tablets and two cups of ammonia in half a bucket of hot water for the

4

purpose of poisoning Mr. Medina.  The fumes from this solution made Mr. Medina ill; they caused his eyes to burn, prevented him from breathing, and caused him to vomit.  He returned to the hospital for treatment.  At the time Mr. Perez mixed the solution, Mr. Medina claims that Mr. Perez knew that Mr. Medina had recently been hospitalized for blood clots on his lungs.

21.     During a conversation between Mr. Medina and Mr. Nerim sometime in 2003, Mr. Nerim got angry and threw a can of soda in an underhand fashion against the school's exterior wall.  Mr. Medina felt threatened by Mr. Nerim's action.

22.     At an unspecified time, Mr. Medina's spleen was removed.  At another unspecified time, his hip bone "died," requiring a replacement.

23.     Mr. Medina believes he was treated differently than other custodians at Sabin because he: (a) had to report daily while he was in the hospital, whereas Mr. Perez did not have to make similar reports when sick; (b) Mr. Nerim did not believe him when he said he, or his wife, was sick; (c) Mr. Perez made him do Mr. Perez' work; (d) Mr. Nerim and Mr. Perez ridiculed him; (e) Mr. Nerim and his friends would attend social events, leaving Mr. Medina to do the work; (f) Mr. Medina had to cover for Mr. Nerim at work; (g) Mr. Nerim treated Mr. Perez with disrespect; (h) Mr. Nerim required Mr. Medina to plan his vacation around the convenience of others; (i) he believes that other custodians did not have to fill out "white cards" or "short leave of absence forms"; (j) he could not leave the campus during lunch time; (k) his work schedule was constantly being changed; (l) he worked more hours than other custodians; (m) he was not allowed to seek medical attention during work hours; (n) he was not allowed to use the custodian's bathroom; and (o) he was not allowed to listen to the radio in the custodian's office.

24.     There is no evidence that there were any other Custodian Helpers who worked at

5

the school, or what their job duties were.

25.     Mr. Medina left Sabin Elementary School and was transferred to John F. Kennedy High School, where he worked as a Custodian Helper, the same job he held at Sabin Elementary School.  He was then transferred to Kunsmiller Middle School, where he also worked as a Custodian Helper.  There is no evidence that his job duties changed in any respect following either transfer.

26.     Just over one year after Mr. Medina left Sabin Elementary School, he retired when he ran out of sick leave.

27.     Mr. Medina believes that he was forced to retire.  He contends that Mr. Nerim and Mr. Perez caused his health to deteriorate, resulting in the use of all accumulated sick leave and his inability to work.

28.     There is no affidavit, deposition testimony, or verified report from any physician or medical professional which contains opinions as to the causation or exacerbation of Mr. Medina's health conditions.

## IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242,

248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).

A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in

support of and opposition to the motion is so contradictory that, if presented at trial, a judgment

could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary

judgment motion, a court views all evidence in the light most favorable to the non-moving party,

thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213

(10th Cir. 2002).

      If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence. *See Fed. R. Civ. P. 56(e).

Once the moving party has met its burden, to avoid summary judgment the responding party must

present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See*

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v.*

*Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is no genuine dispute as to any

material fact, no trial is required because the court applies the law to the undisputed facts and

enters judgment. If there is a genuine dispute as to material fact, a trial is required.

      If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

# V.  Analysis

## A.  Claim 1

Mr. Medina's conspiracy claim is derived from 42 U.S.C. § 1985.  Although Mr. Medina

has not specified under which subsection of § 1985 he proceeds, the only subsection with

potential application is subsection (3).  It  provides in relevant part:

> If two or more persons in any State or Territory conspire . . . for
> the purpose of depriving, either directly or indirectly, any person or
> class of persons of the equal protection of the laws, or of equal
> privileges and immunities under the laws . . .the party so injured or
> deprived may have an action for the recovery of damages
> occasioned by such injury or deprivation, against any one or more
> of the conspirators.

Such statute provides no substantive cause of action.  *See Wheeler v. Swimmer*, 835 F.2d 259,

261-62 (10th Cir. 1987).  Rather, it provides a mechanism for redressing violations of other

rights.  *See id.* at 262.

To establish a *prima facie* conspiracy claim, Mr. Medina must produce evidence that:

(1) Mr. Nerim and Mr. Perez conspired to deprive him of equal protection or equal privileges and

immunities; (2) they engaged in an act in furtherance of the conspiracy; and (3) as a result, Mr.

Medina was injured.  *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  Element 1

requires that Mr. Nerim and Mr. Perez were motivated by Mr. Medina's race or some other class-

based, discriminatory animus.  *See id.*  It also requires a meeting of the minds as to a particular

unlawful objective.  *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).

Mr. Medina has produced no evidence to support any element.  He has produced no

evidence that Mr. Nerim and Mr. Perez agreed upon a specific unlawful objective or engaged in

an act to further that objective.  He also has not made a demonstration that he was harmed by any

conspiratorial conduct. Although Mr. Medina has produced evidence of his physical ailments, he has made no *prima facie* showing that these ailments were caused by any conspiratorial action.

## B. Claim 2

To establish a *prima facie* procedural due process violation, Mr. Medina must produce evidence that: (1) he was deprived of a liberty or property interest; and (2) without adequate process. *See Boutwell v. Keating*, 399 F.3d 1203, 1211-12 (10th Cir. 2005); *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003).

The alleged property interest at stake was Mr. Medina's job.[2] To the extent that Mr. Medina contends that his retirement was involuntary, the parties agree that the Court should be instructed by law governing constructive discharges in assessing whether there was a deprivation of a property interest. The elements of a constructive discharge claim are: (1) a reasonable person would have viewed the employee's working conditions as intolerable; and (2) the working conditions were so difficult that a reasonable person in the employee's position would have felt compelled to resign. *See Heno v. Sprint/United Management Co.*, 208 F.3d 847, 858 (10th Cir. 2000); *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992). A claim for constructive discharge does not lie if the employee resigns of his own free will, even if as a result of his employer's actions. *See Heno*, 208 F.3d at 858. In addition, an employee's subjective beliefs are not relevant to such claim, as an objective standard governs this analysis. *See id.*

Mr. Medina has failed to produce evidence in support of a constructive discharge. At the time he retired, he was not working at Sabin Elementary School, and was not working under the

---

[2] The Defendants contest whether Mr. Medina had a property interest in his job; it is not necessary to resolve this issue.

supervision of Mr. Nerim or Mr. Perez. There is no evidence to suggest that Mr. Medina was coerced to retire.  Instead the evidence is that he chose to retire – not out of a sense of compulsion by any act or statement by a Defendant, and not because of his working conditions – but because he had run out of sick leave and felt that his financial circumstances required him to retire.  By retiring, Mr. Medina became able to avoid unpaid leave and draw a retirement pension.

Although he blames Mr. Nerim and Mr. Perez for the exacerbation of his illnesses requiring him to use all available sick leave, his statements are conclusory and unsupported by competent extrinsic evidence.  An opinion as to whether an illness was caused or exacerbated by particular factors is an expert medical opinion which must be elicited from a person who is qualified to give such opinion.  *See* Fed. R. Evid. 702.  There is also no evidence that any Defendant deprived Mr. Medina of any particular process prior to his retirement; he asked for none, and was denied none.

## C.  Claim 3

Mr. Medina's equal protection claim has two components: a disparate treatment claim, and a hostile work environment claim.

### <u>Disparate Treatment Claim</u>

To establish a *prima facie* disparate treatment claim, Mr. Medina must produce evidence that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) similarly situated employees were treated differently.  *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

The term "adverse employment action" is liberally construed, but it does not include every

10

action taken by an employer that affects current or future employment, and it excludes actions having only *de minimis* impact. *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004). Such term includes acts constituting a material and adverse change in employment status, such as hiring, firing, failure to promote, or reassignment with significantly different responsibilities. *See id.* at 1032-33; *Wells v. Colorado Dept. of Transp.,* 325 F.3d 1205, 1213 (2003). It also includes decisions causing a significant change in benefits. *See Hillig*, 381 F.3d at 1032-33.

A "similarly situated" employee is one who shares the same supervisor and is evaluated and disciplined under the same performance standards. *See Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005). Employees who hold different positions with different job duties are not similarly situated. *See, e.g., Miller v. Automobile Club of New Mexico, Inc.,* 420 F.3d 1098, 1115 (10th Cir. 2005).

Mr. Medina has made no *prima facie* demonstration as to elements 2 and 3 of his disparate treatment claim. Nothing Mr. Nerim did resulted in any change to Mr. Medina's employment status. He remained employed at Sabin Elementary School until his reassignment, and he does not contend that the position at the high school or the middle school was any different than his position at the elementary school. For the reasons discussed *supra*, his retirement did not amount to an involuntary termination of employment. In addition, Mr. Medina has not made any showing that he was treated differently than any similarly situated employees. He identifies no other employees holding the Custodian Helper job or what their job duties were. Although he believes he was treated differently than Mr. Nerim and Mr. Perez, they were his supervisors and, therefore, not similarly situated to him.

## Hostile Work Environment Claim

To establish a *prima facie* hostile work environment claim, Mr. Medina must produce evidence that: (1) he was subjected to harassment; (2) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment; and (3) the harassment was racial or stemmed from a racial animus. *See Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998).

Normal job stress, including stress caused by personality conflicts, does not equate to a hostile work environment. *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998). To be severe, the harassing conduct must be both subjectively and objectively severe under the totality of the circumstances. *See id.* at 1433. Sporadic racial slurs – while offensive and inappropriate – do not establish that harassment was pervasive. *See id.* at 1432. Rather, there must be a "steady barrage" of offensive racial comments. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-13 (10th Cir. 1987).

This claim is asserted only against Mr. Nerim and DPS – it is not asserted against Mr. Perez. Therefore, the Court considers whether there is evidence that Mr. Nerim engaged in harassing conduct.

Construing the evidence in Mr. Medina's favor, he was arguably subjected to harassment by Mr. Nerim. Mr. Nerim made derogatory statements about his ethnic background on several occasions. Such statements were: (1) "Well, you can't be Indian because Indians don't grow whiskers or beards or moustaches"; (2) "The only good Indian is a dead one"; and (3) "You should just get him out of here and get someone else . . . because [Mr. Medina is] a stupid Indian"; and (4) Mr. Medina is stupid and not "able to read and write and Indians don't know

12

how to do it anyway." Although such statements were sporadic and cannot constitute a "steady barrage" of offensive comments for purposes of establishing pervasiveness, a reasonable jury could find that the statements were severe and stemmed from a racial or ethnic animus.

Mr. Medina's *prima facie* showing of a hostile work environment does not end the inquiry with respect to this claim, however. DPS also argues that Mr. Medina cannot establish that it should be liable for any harassment by Mr. Nerim. Mr. Medina responds that DPS had policies and procedures in place which Mr. Nerim followed and which resulted in a violation of his constitutional rights.

To make a *prima facie* showing of liability against DPS, Mr. Medina must produce evidence that: (1) Mr. Nerim's harassing conduct was representative of an official policy or custom of DPS; or (2) Mr. Nerim had final policy making authority with respect to the challenged conduct. *See Orr*, 417 F.3d at 1153-54. Identification of a final policymaker requires examination of applicable statutes, ordinances and regulations. *See Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1189 (10th Cir. 2003).

Mr. Medina has not produced evidence of a DPS custom or policy. He also has not produced evidence or pointed to any law which demonstrates that Mr. Nerim was a final policymaker. His evidence only suggests that Mr. Nerim supervised custodial staff at the elementary school, not that his word was final as to policy matters. Under Colorado law, the Board of Education is vested with policymaking authority on behalf of DPS, and Mr. Medina has pointed to no specific delegation of that authority to Mr. Nerim. *See* § 22-32-110(1)(k), C.R.S. Therefore, DPS cannot be liable for Mr. Nerim's alleged harassment of Mr. Medina.

13

**IT IS THEREFORE ORDERED** that:

(1)     The Defendants' Motion for Summary Judgment **(#40)** is **GRANTED IN PART**

and **DENIED IN PART**.

(2)     Claims 1 and 2 are dismissed.  In addition, all claims against Mr. Perez and DPS

are dismissed.

(3)     The sole claim remaining is Mr. Medina's hostile work environment claim against

Mr. Nerim.

Dated this 27th day of June, 2006

BY THE COURT:

Marcia S. Krieger
United States District Judge

14